818 F.2d 28
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CENTEX CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,
v.
SUNSET COMPANIES, INC., Transamerica Insurance Company,
Defendant-Appellee.
 No. 86-3631.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1987.
Decided April 27, 1987.
 
 Before PHILLIPS and ERVIN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 Joseph Dominick West (Judith B. Kassel; Jones, Day, Reavis & Pogue, on brief), for appellant.
 Kevin Sean Hendrick (Hill, Lewis, Adams, Goodrich & Tait, on brief), for appellees.
 PER CURIAM:
 
 
 1
 This action arises from a subcontract entered into between Centex Construction Company (Centex) and Sunset Companies, Inc. (Sunset). Centex was the general contractor for the Maryland Transit Administration (the "MTA") on a construction project known as the Wabash Division Bus Facility in Baltimore, Maryland. Under the subcontract Sunset agreed to provide a transit vehicle cleaning system. Sunset was never able to supply a system acceptable to the MTA and the MTA eventually required Centex to supply a system manufactured by another company, Costanzo Industries, Inc. Centex subsequently instituted this suit against Sunset and Transmerica Insurance Company (Transamerica), the surety on Sunset's performance bond, to recover the additional costs of approximately $85,000 which Centex incurred in having the work performed by Costanzo.
 
 
 2
 The District Court entered summary judgment on behalf of Sunset and Transamerica on the ground that the subcontract upon which the action is based never came into being.[1] We reverse on the ground that there is an ambiguity in the governing contract language which cannot be resolved without consideration of extrinsic evidence which has not yet been made part of the record.
 
 
 3
 There are two contractual provisions which are critical to this litigation. The first is contained in paragraph 22 of the subcontract between Centex and Sunset. That paragraph states:
 
 
 4
 Owner Approval. This subcontract is subject to the approval of the Subcontractor by the Owner or its authorized representative, if the Contract Documents provide for such approval.
 
 
 5
 Paragraph GP-8.01 of the prime contract between Centex and the Maryland Transit Administration (the "MTA") provides, in turn, as follows:
 
 GP-8.01 Subcontracting
 
 6
 Except as may be provided elsewhere in the contract, the Contractor to whom a contract is awarded shall perform with his own organization and with the assistance of workmen under his immediate supervision, work of a value of not less than 50 percent of the total original value of the Contract.
 
 
 7
 No portion of the contract shall be subcontracted, assigned or otherwise disposed of except with the written consent of the procurement officer and of the surety. Consent to subcontract, assign or otherwise dispose of any portion of the contract shall not be construed to relieve the Contractor or surety of any responsibility for the fulfilling of all the requirements of the contract.
 
 
 8
 Sunset contends that it was never approved as a subcontractor by the MTA and that therefore the condition precedent to its performance, allegedly established by paragraph 22 in interaction with paragraph 8.01, was never fulfilled.[2] The premise of the argument is that paragraph 8.01 of the prime contract imposes a requirement that the MTA approve subcontractors.
 
 
 9
 Section 8.01 can be read as Sunset reads it. However, it can equally be read as imposing a requirement only that the MTA approve the fact of subcontracting. Indeed, since the first sentence of the paragraph specifies a percentage of work which must be done by the general contractor itself, the latter reading may be the more plausible one.
 
 
 10
 In any event, paragraph 8.01 is ambiguous and a factual record must be developed in order to interpret it properly. Facts which must be explored in that respect include (1) whether the MTA approved subcontractors on other portions of the job which were subcontracted out by Centex or only the actual subcontracting of the work, and (2) whether Centex and Sunset, in their pre-contract negotiations and under the contract, acted as though the MTA's approval of the subcontract rather than the subcontractor was all that was required. Of course, in the event that it were ultimately determined that paragraph 8.01 required MTA approval only of the subcontract, a further factual inquiry would have to be made as to whether or not the MTA actually granted such approval or waived this requirement by its course of conduct.[3] This is so because Centex, which had the duty under paragraph 8.01 of the prime contract to obtain the MTA's approval, obviously could not rely upon its own failure to fulfill this duty as a basis for declaring a breach by Sunset.
 
 
 11
 For these reasons the judgment of the District Court is reversed and the case remanded for further proceedings.
 
 
 12
 REVERSED.
 
 
 
 [1]
 Both Sunset and Transamerica are appellees. "Sunset," as used in this opinion, sometimes refers to them collectively
 
 
 [2]
 On appeal Sunset has somewhat modified the position which it took in the District Court. Whereas it argued below that the fact that MTA never approved it as a subcontractor prevented the subcontract from ever coming into existence, it now acknowledges that a contractual relationship of some sort existed between the parties (requiring Sunset, for example, to obtain payment and performance bonds) but that its obligation to perform never came into existence because of MTA's failure to approve it as a subcontractor
 
 
 [3]
 Centex argues that the MTA necessarily approved the subcontracting of the Transit Vehical Cleaning System by virtue of the fact that the relevant portion of the specifications gave Centex the option of providing a brand name product (the system manufactured by Costanzo) or an "equal." Centex reasons that in order to provide an "equal," it necessarily would have had to subcontract out the work. Whether or not this argument has merit can be considered by the District Court in the context of a fully developed factual record